2013 OK CIV APP 3

**COUNTRY PLACE MORTGAGE, LTD., Plaintiff/Appellant,**

v.

**Charles E. BROWN and Lorea Kaye Brown, Defendants/Appellees,**

and

**Bank Source Mortgage Company, Third Party Defendant.**

No. 109,130.

Court of Civil Appeals of Oklahoma, Division No. 1.

Nov. 30, 2012.

William L. Hickman, Tulsa, Oklahoma, for Plaintiff/Appellant.

James L. Edgar, John J. Tanner, Tulsa, Oklahoma, for Defendant/Appellee.

BRIAN JACK GOREE, Judge.

¶1 Plaintiff/Appellant, Country Place Mortgage, Ltd. (Country Place), sued Defendants/Appellees, Charles E. Brown and Lorea Kaye Brown, to recover on a note and mortgage. The trial court rendered judgment based on a jury verdict against the Browns in the amount of $18,171.18, and denied Country Place's motion for new trial or judgment notwithstanding the verdict. Country Place seeks review of those orders. We conclude the jury was misled by a jury instruction failing to instruct it that the measure of damages included the balance due under the note. We reverse and remand for new trial.

¶2 This matter arises from a transaction in which the Browns purchased a mobile home from Country Place's parent company, Palm Harbor Homes, Inc., and financed the purchase through Country Place. Country Place loaned a sum in excess of the purchase price and took a mortgage on the Browns' real property and mobile home. Country Place sued the Browns to recover on the note and mortgage, alleging the Browns were in default. Country Place asserted the sum due was $155,887.76 plus interest at 10.75% per annum until paid. The Browns answered and denied liability.

¶3 The Browns later amended their answer to assert a counterclaim against Country Place, alleging Country Place's agent, joint venturer, or partner made fraudulent misrepresentations to the Browns on which they relied to their detriment. The Browns named BankSource Mortgage Company (BankSource) as a third party defendant, alleging BankSource had participated in the fraud, but failed to achieve service on BankSource.

¶4 Country Place answered the counterclaim and denied liability. The parties tried the matter to a jury over Country Place's objection. The jury returned a verdict in favor of Country Place in the amount of $18,171.18. The trial court entered judgment based on the jury verdict.

¶5 Country Place moved for new trial or for judgment notwithstanding the verdict, asserting, among other things, that the trial court erred in instructing the jury regarding damages. In addition, Country Place moved for an order nunc pro tunc dismissing BankSource because it was never served. The trial court denied the former motion and granted the latter. Country Place appeals, contending the trial court should have granted judgment to Country Place on the note in the amount of $217,000.00 as a matter of law, and the trial court erred in instructing the jury on fraud and on the measure of damages.

■ ¶6 According to statute, no judgment shall be set aside or new trial granted by an appellate court on the ground of misdirection of the jury unless the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right. 20 O.S.2011 § 3001.1. In reviewing jury instructions, we consider the accuracy of the statement of law, the applicability of the instructions to the issues when the instructions are considered as a whole, and whether the probability arose that jurors were misled and reached a different conclusion due to an error in the instruction. *Cimarron Feeders, Inc. v. Tri–County Elec. Coop., Inc.*, 1991 OK 104, 818 P.2d 901, 902.

¶7 Country Place's proposed jury instructions included the following Instruction No. 11 regarding the general measure of damages:

> If you decide for Plaintiff on its claim for breach of contract, you must then fix the amount of its damages. In this case, the amount of damages should be determined as the balance due under the note.

At trial, Country Place's attorney objected to his own proposed instruction, asserting the measure of damages should include not only the balance due under the note but also "taxes, insurance, and other expenses." The following transpired:

> THE COURT: Well, I think I'll just strike that. You can tell them what you think it should be. I'm just going to use 23.51 as it was written, because that's an amended 23.51. You tell them what you think it is. . . .
>
> . . .
>
> Country Place's ATTORNEY: I think they have to have some direction what the Court might consider to be their damages.
>
> . . .
>
> THE COURT: Set out the appropriate measure of damages. Well, it says to set out the appropriate measure.
>
> Country Place's ATTORNEY: Yeah, I think you have to do that. And I think we are entitled to the balance—the amount due under the contract and their taxes, insurance, and other expenses.
>
> THE COURT: Balance due under the note.
>
> Country Place's ATTORNEY: You can say the note. And the taxes, insurance, and expenses.
>
> . . .
>
> THE COURT: Okay. I'll amend it to say that.
>
> BROWNS' ATTORNEY: Now what did you write there, Judge?
>
> THE COURT: I just left it in this case, and he asked that it be included [sic] the taxes, insurances, and expenses as well.

■ ¶8 The instruction the trial court actually gave the jury stated, "If you decide for Plaintiff on its claim for breach of contract, you must then fix the amount of its damages, the taxes, insurance and expenses." Although the trial court had stated during the jury instruction conference that it would keep the language "balance due under the note" and add the words "taxes, insurance, and expenses" to the measure of damages, it failed to do so. Instead, it dropped the language directing the jury to include the balance due under the note as an element of damages.

¶ 9 This jury instruction misstated the law on the measure of damages for breach of contract. Pursuant to 23 O.S.2011 § 21, the measure of damages for breach of contract is "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Pursuant to 23 O.S.2011 § 22, "[t]he detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligation, with interest thereon." Oklahoma Uniform Jury Instruction—Civil No. 23.51, on the general measure of damages for breach of contract, incorporates these statutes as follows:

> If you decide for [Plaintiff] on [his/her/its] claim for breach of contract, you must then fix the amount of [his/her/its] damages. This is the amount of money that is needed to put [him/her/it] in as good a position as [he/she/it] would have been if the contract had not been breached. In this case, the amount of damages should be determined as follows: [set out the appropriate measure of damages].

The notes on use explain that the trial judge should use the last sentence to tell the jury how to calculate damages for the particular type of contract involved in the case.

¶ 10 The contract in this case consisted of the note and mortgage. The note provided the Browns would pay the sum of $153,044.61 plus interest at the yearly rate of 10.750% until paid in full, in monthly payments of $1,472.43. It also provided for late charges of five percent of the overdue payment and for acceleration of the full amount of principal upon default. The mortgage provided the Browns would pay "all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority" over the mortgage, and maintain insurance on the property. In addition, the Browns agreed to pay Country Place's fees for services performed in connection with the Browns' default, including but not limited to attorney fees and property inspection and valuation fees.

¶ 11 The jury instruction on the measure of damages should have included all of these items of damages for which Country Place put on evidence. Country Place's collections manager testified regarding damages. He said the Browns went into default as of November 2007, they failed to pay taxes for 2006, 2007, 2008, and 2009, and they let the insurance lapse in 2008. He sponsored supporting exhibits and testified as follows:

A The note and mortgage—the principal and interest delinquent payments are approximately $49,000. We have approximately $6,600 in the taxes, $4,400 in the insurance, legal fees of about $8,900. The total past due balance is approximately $70,000, dating back to the November of 2007 payment.

Q All right. Now are you provided other remedies other than the reimbursement of those expenses?

A No. I mean other than possession of the home.

Q All right. And how about the balance due on the note?

A The only way to get that is to—I mean if the customer doesn't pay it is to repossess the property and sell it.

. . .

Q . . . Sir, what's the balance due under the terms of the note at this time?

A Approximately $217,000.

Q And that—that includes the $70,000 you just referred to; is that correct?

A Correct, yes.

Q All right. That would be the entire amount that would be due under the terms of the contract?

A Correct.

Q Plus these expenses that you've just referred to, and additionally it includes the delinquent payments?

A Yeah, it includes everything.

¶ 12 This record shows that Country Place put on evidence of the balance due under the note, including expenses for taxes, insurance, and attorney fees. The trial court was required to instruct on these elements of the measure of damages. It failed to instruct the jury that Country Place was entitled to recover the balance due under the note.

¶ 13 The probability that the jurors were misled and reached a different conclusion due to this error in the instruction is demonstrated by the notes the jury foreperson sent to the trial judge during deliberations. The first note stated, "What amount is the Plaintiff asking for & how is that broken down? Is there an Exhibit that shows this?" The second note stated, "If we find for the Plaintiff, does that allow their foreclosure? Then we will put sum of ___ for anything in addition to the foreclosure?"

¶ 14 Neither the transcript nor the record reflects the disposition of the jury's questions. The jury rendered a general verdict finding the breach of contract issue in favor of Country Place and "fix[ing] the dollar amount of damages in the sum of $18,171.18." This award of damages appears to include Country Place's expenses for taxes, insurance, and attorney fees, but not the balance due under the note.[1] Therefore we conclude the jury was misled into thinking it did not need to include the balance due under the note in the award of damages because it believed Country Place would recover that amount by repossessing and selling the property. In *Nealis v. Baird,* 1999 OK 98, 996 P.2d 438, the Court granted a new trial based upon an erroneous jury instruction. A note submitted by the jury during deliberation made it "reasonably evident" the jury was misled. *Nealis,* ¶ 42. In the instant case, it is probable the jury reached a different conclusion than it would have reached had it been properly instructed and the error has probably resulted in a miscarriage of justice Accordingly, the trial court erred in denying Country Place's motion for new trial.

¶ 15 We do not otherwise find error in the trial court's conduct of the trial. The Browns submitted prima facie evidence supporting fraud. "[F]raud is a question of fact to be determined by the jury." *Silk v. Phillips Petroleum Co.,* 1988 OK 93, 760 P.2d 174, 177. The trial court properly submitted the Browns' fraud claims and the jury found no damages. The trial court entered judgment in favor of Country Place on those claims and the Browns did not appeal.

1. The trial exhibits indicated taxes in the amount of $6,959.84, insurance of $4,830, and attorney fees of $6,448.84. These sums total $18,238.68. The verdict was $18,171.18.

 ¶ 16 Oklahoma allows a new trial to be granted solely on the issue of damages where it is clear the error in assessing damages did not affect the entire verdict. *Lierly v. Tidewater Petroleum Corp.,* 2006 OK 47, ¶ 35, 139 P.3d 897, 907.

¶ 17 For the foregoing reasons, the trial court's judgment is REVERSED and this matter is REMANDED for new trial solely on the issue of Country Place's damages.

BUETTNER, P.J., and JOPLIN, V.C.J., concur.